IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 23-cv-02917-NYW-MDB

JEROME WADE,

    Plaintiff,

v.

WESCO INSURANCE COMPANY,

    Defendant.

## ORDER ON MOTION TO DISMISS

This matter is before the Court on the Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) or, Alternatively, Transfer Venue (the "Motion to Dismiss" or "Motion to Transfer").  [Doc. 15].  The Court has reviewed the Motion and the related briefing, the applicable case law, and the entire case file, and concludes that oral argument would not assist in the resolution of this matter.  For the reasons set forth below, the Motion is respectfully **DENIED**.

## BACKGROUND

The Court draws the following facts from the Complaint for Damages, [Doc. 1], and takes them as true for purposes of this Order.  On February 20, 2022, Plaintiff Jerome Wade ("Plaintiff" or "Mr. Wade"), a resident of Colorado, was involved in a motor vehicle collision in Dallas, Texas.  [*Id.* at ¶¶ 1, 12–13, 17].  The van Mr. Wade was riding in, which was owned by non-party M & M Hotel Venture, LLC, was struck by a car driven by alleged tortfeasor Luis Edgar Aguero Zavala ("Mr. Zavala").  [*Id.* at ¶¶ 12, 17–19].  Defendant

Wesco Insurance Company ("Defendant" or "Wesco"),[1] an Ohio corporation, had issued an automobile insurance policy to M & M Hotel Venture that was in effect at the time of the collision ("the Policy"). [*Id.* at ¶¶ 8, 31–33].

Plaintiff was injured in the collision and has incurred medical expenses as a result. [*Id.* at ¶¶ 20–21]. According to Plaintiff, Mr. Zavala was either an uninsured or underinsured driver, so Plaintiff submitted a claim for uninsured/underinsured motorist ("UM/UIM") benefits to Wesco. [*Id.* at ¶¶ 36–38]. Mr. Wade alleges that Wesco has failed to pay him the benefits he is owed under the Policy. [*Id.* at ¶¶ 39, 47–48].

Mr. Wade filed this case in the United States District Court for the District of Colorado on November 3, 2023, asserting three claims: (1) a negligence claim against Mr. Zavala; (2) a breach of contract claim against Wesco; and (3) a bad faith claim "Under Common Law & §10-3-1104," which the Court construes as encompassing both common law bad faith and statutory bad faith under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116.[2] [Doc. 1 at ¶¶ 23–57]. Plaintiff voluntarily dismissed his claim against Mr. Zavala under Rule 41(a)(1)(A)(i) before Mr. Zavala ever appeared in the case. [Doc. 36; Doc. 37].

On January 12, 2024, Defendant moved to dismiss this case under Rule 12(b)(3) based on improper venue or to alternatively transfer the case to a different venue under

---

[1] Plaintiff originally sued AmTrust Financial Service, Inc., instead of Wesco. *See* [Doc. 1 at 1]. On January 24, 2024, Wesco moved to substitute itself in as a party on the basis that it was "improperly named as AmTrust Financial Service, Inc." [Doc. 19 at 1]. Plaintiff did not oppose the requested relief, [*id.*], and the Honorable Maritza Dominguez Braswell granted the motion to substitute, [Doc. 22]. All references to AmTrust in the Complaint are construed as references to Wesco.

[2] Two types of bad faith claims are available under Colorado law: (1) common law bad faith breach of an insurance contract and (2) unreasonable delay or denial of insurance benefits under Colo. Rev. Stat. §§ 10-3-1115 and 10-3-1116, which is also referred to as "statutory bad faith." *Dowgiallo v. Allstate Ins. Co.*, No. 19-cv-03035-KMT, 2020 WL 1890668, at *2 (D. Colo. Apr. 16, 2020).

2

28 U.S.C. § 1404(a), arguing that this case belongs in Texas. *See* [Doc. 15]. About a month later, Plaintiff filed an identical lawsuit against Wesco in the United States District Court for the Northern District of Texas. *See* [Doc. 46 at 1]; *see also Wade v. Wesco Ins. Co.*, No 3:24-cv-00319-S (N.D. Tex.). On April 25, 2024, Wesco moved to dismiss or transfer the Texas case, arguing that it belongs in *Colorado*. *See* [Doc. 45 at 2]; *see also Wade v. Wesco Ins. Co.*, No 3:24-cv-00319-S, ECF No. 10 (N.D. Tex. Apr. 25, 2024). The Court permitted, on the Parties' requests, limited supplemental briefing addressing the Texas case. *See* [Doc. 44; Doc. 45; Doc. 46].

## LEGAL STANDARDS

**I.     Proper Venue**

A civil action can be brought in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). A defendant may challenge a plaintiff's choice of venue by filing a motion under Rule 12(b)(3), which permits dismissal of a claim for "improper venue." Fed. R. Civ. P. 12(b)(3). The rule's use of the word "improper" means that dismissal is appropriate "only when venue is 'wrong' . . . in the forum in which it was brought." *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). "When venue is challenged, the court must determine whether the case falls within one of the three categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is

3

improper, and the case must be dismissed or transferred under § 1406(a)." *Id.* at 56; *see also* 28 U.S.C. § 1406(a) (if venue is improper, the court "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

It is the plaintiff's burden to show that venue is proper in the forum district. *Scott v. Buckner Co.*, 388 F. Supp. 3d 1320, 1324 (D. Colo. 2019). At the motion-to-dismiss stage, the plaintiff must make only a "prima facie showing of venue." *Id.* (quotation omitted). And when deciding if the plaintiff has met that prima facie burden, the court may examine facts outside of the complaint, but must accept all well-pleaded allegations as true if they are uncontroverted by the defendant's evidence and must draw all reasonable inferences and resolve all factual ambiguities in the plaintiff's favor. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1260 (10th Cir. 2012).

## II. Change of Venue

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). "In ruling on a motion to transfer venue, district courts must assess two issues: (1) whether the case might have been brought in the proposed transferee district, and (2) whether the 'competing equities' weigh in favor of adjudicating the case in that district." *Brumate, Inc. v. Walmart Inc.*, No. 22-cv-00354-WJM-SBP, 2023 WL 3602327, at *2 (D. Colo. May 23, 2023). These "competing equities" include a number of factors, such as the plaintiff's choice of forum, the accessibility of witnesses and evidence, the desire to have local courts apply local laws, and "all other considerations of a practical nature that

4

make a trial easy, expeditious and economical." *Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1167 (10th Cir. 2010) (quotation omitted). The party seeking transfer bears the burden to show that the current forum is inconvenient. *Id.*

## ANALYSIS

I.   **Dismissal Under Rule 12(b)(3)**

Plaintiff argues that venue is proper under § 1391(b)(2), *see* [Doc. 24 at 3], which provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," 28 U.S.C. § 1391(b)(2). Under that subsection, "venue is not limited to the district with the *most* substantial events or omissions." *Emps. Mut. Cas. Co.*, 618 F.3d at 1165. A plaintiff is not required to "choose the best venue or determine which forum has the most, or most significant, contacts with plaintiff's claims." *Sanchez v. Miller*, No. 15-cv-01615-REB-MEH, 2016 WL 675816, at *3 (D. Colo. Feb. 19, 2016). The relevant question is "whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *Pecoraro v. Sky Ranch for Boys, Inc.*, 340 F.3d 558, 563 (8th Cir. 2003).

Courts assessing venue under § 1391(b)(2) must first "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims" and then "determine whether substantial events material to those claims occurred in the forum district." *Emps. Mut. Cas. Co.*, 618 F.3d at 1166 (quotation omitted). "The substantiality requirement is satisfied upon a showing of 'acts and omissions that have a close nexus' to the alleged claims." *Id.* (quoting *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1372 (11th Cir. 2003)). Courts do not focus on "a single triggering event prompting the action," looking instead to "the entire sequence of events underlying the claim." *Green v. Perry's Rests. LTD*, No.

21-cv-00023-WJM-NRN, 2021 WL 5038824, at *2 (D. Colo. Oct. 29, 2021) (quotation omitted).  "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts."  *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005).

Although neither Party raises arguments directed at specific claims, "[t]he propriety of venue under § 1391(b)(2) is determined separately for each claim."  *Premier Grp., Inc. v. Bolingbroke*, No. 15-cv-01469-PAB-CBS, 2015 WL 4512313, at *4 (D. Colo. July 27, 2015) (quotation omitted); 14D Charles Alan Wright and Arthur R. Miller, Federal Practice & Procedure § 3808 (4th ed. April 2023 update) ("[I]f the plaintiff asserts multiple claims against the defendant, venue must be proper for each claim.").  The Court thus conducts a separate venue analysis for each of Plaintiff's claims.

**Breach of Contract Claim.**  Looking first at the nature of Plaintiff's contract claim and the acts underlying that claim, *Emps. Mut. Cas. Co.*, 618 F.3d at 1166, Mr. Wade alleges that, as a passenger of a vehicle insured by Wesco, he is covered under the Policy for injuries sustained while riding in that vehicle, [Doc. 1 at ¶¶ 43–46].  He claims that Wesco breached the insurance contract by failing to pay him the full amount of UM/UIM benefits that he is owed under the Policy.  *See, e.g.*, [*id.* at ¶¶ 20–22, 38–39, 41, 47].  The crux of the Parties' dispute appears to be the nature and extent of Plaintiff's damages.  *See* [Doc. 27 at 4 (Defendant representing in the Scheduling Order that it disputes "the nature, extent, and causation of some of the injuries and damages claimed by Plaintiff, as well as the amount sought by Plaintiff with respect to his UM/UIM claim.")].

"In determining the proper venue for a breach of contract action, relevant factors include 'where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'" *Premier Grp.*, 2015 WL 4512313, at *6 (quoting *Etienne v. Wolverine Tube, Inc.*, 12 F. Supp. 2d 1173, 1181 (D. Kan. 1998)). No Party directly addresses these factors or raises any argument about where the Policy was negotiated or executed. [Doc. 15; Doc. 24]. Defendant characterizes the Policy as a "Texas commercial automobile insurance policy," [Doc. 15 at 4], and the Policy identifies the primary insured as "Atlantic Hotels Management Ltd, 1601 Bryan Street, M210, Dallas TX 75201," *see* [Doc. 15-1 at 7], but the Policy excerpts do not suggest that performance under the Policy is limited to Texas, *see generally* [*id.*]. Nor does Defendant point to any forum selection clause within the Policy that limits any actions arising under the Policy. *See* [Doc. 15].

Thus, the Court turns to considering the place where the alleged breach occurred. Mr. Wade alleges that Wesco breached the Policy by "fail[ing] and refus[ing] to make payment in accordance with the express terms of the applicable insurance contract." [Doc. 1 at ¶ 47]. He argues in his Response that his communications with Wesco "are substantial events material to [his] breach of contract claim[]" and represents in his accompanying declaration that "[a]ll of [his] communication with [Wesco] representatives has taken place in Colorado," [Doc. 24 at 4; Doc. 24-1 at ¶ 9], which the Court construes to include the insurance claim submitted to Wesco. *See also* [Doc. 24 at 4 ("Plaintiff communicated with Defendant [Wesco] in Colorado. Any email communications from [Wesco] to Plaintiff originated in Ohio." (citation omitted)); Doc. 24-2 (emails between Plaintiff and Wesco claims handler)]. He also asserts that he received a partial $2,500

7

payment from Wesco, pursuant to the Policy, in Colorado.  [Doc. 24 at 4]; *see also* [Doc. 24-1 at ¶ 10].

Although Plaintiff's Complaint and Response could be more robust, the Court nevertheless finds that Plaintiff has met his prima facie burden to show that a substantial part of the events giving rise to Plaintiff's breach of contract claim—namely, Defendant's alleged breach of the insurance policy—occurred in Colorado.  "When a breach of contract occurs by means of communication between two states," e.g., Plaintiff's submission of an insurance claim and Defendant's alleged denial of benefits, "events occur just as much in either location."  *Bartch v. Barch*, No. 18-cv-03016-MSK-NYW, 2019 WL 2208475, at *4 (D. Colo. May 22, 2019).  Thus, the alleged breach of contract could reasonably be deemed to have occurred in either Ohio or Colorado.  *Cf. Kaman Aerospace Corp. v. Cent. Copters, Inc.*, No. 3:22-cv-01445-SVN, 2023 WL 5530684, at *10 (D. Conn. Aug. 28, 2023) ("[The defendant's] various communications to [the plaintiff's] Connecticut office, especially those concerning the transactions at issue, are significant events for the purpose of the Court's venue analysis under § 1391(b)(2)." (collecting cases)).  Furthermore, Plaintiff has received at least a partial payment from Wesco in Colorado, [Doc. 24-1 at ¶ 10], and alleges he is entitled to more.  This also supports a conclusion that a substantial part of the events giving rise to the contract claim occurred in Colorado.  *See, e.g.*, *Steadfast Ins. Co. v. Pop Rests., LLC*, No. 4:09-cv-03148, 2010 WL 3155923, at *10 (S.D. Tex. Aug. 10, 2010) ("[T]he alleged breach of the contract occurred in whatever district Defendants[] were to send payments, or possibly where [the plaintiff] was to receive payments.  Defendants' failure to make payments gave

8

rise to this lawsuit, and so the districts wherein payment was to be made are relevant for determining the location of the breach.").

Even if the Policy was entered into by non-Colorado parties and was intended to cover Texas occurrences, this does not foreclose a finding that a substantial portion of the events giving rise to the breach of contract claim, arising out of Plaintiff's Colorado demand for insurance benefits and Defendant's alleged refusal to send payments to Plaintiff in Colorado, occurred in Colorado. *Cf. Cosa Xentaur Corp. v. Bow*, No. 2:13-cv-02912-JS-ARL, 2014 WL 1331030, at *7 (E.D.N.Y. Mar. 31, 2014) ("Venue may be proper in the district where the contract was substantially negotiated, drafted, and/or executed, even if the contract was not to be performed in that district and the alleged breach occurred elsewhere." (quotation omitted)); *Emps. Mut. Cas. Co.*, 618 F.3d at 1166 (section 1391(b)(2) "contemplates that venue can be appropriate in more than one district and permits venue in multiple judicial districts as long as a substantial part of the underlying events took place in those districts" (cleaned up)).

Defendant's arguments do not convince the Court otherwise. Its contention that venue is improper here focuses on the events surrounding the Texas collision. *See, e.g.*, [Doc. 15 at 4–5 (arguing that "all relevant events in this case occurred in Dallas, Texas"); Doc. 25 at 2 ("The substantial events material to the Plaintiff's claims occurred in Texas, not Colorado.")]. However, the alleged breach of contract did not occur at the time of the Texas collision, but after, when Defendant refused to pay Plaintiff insurance benefits. And even if venue would be proper in a Texas district court, venue "can be appropriate in more than one district" and is "not limited to the district with the *most* substantial events or

omissions." *Emps. Mut. Cas. Co.*, 618 F.3d at 1165–66 (quotation omitted).  Accordingly, the Court finds that Colorado is a proper forum for Plaintiff's breach of contract claim.

***Bad Faith Claim.***  As for his bad faith claim, Plaintiff alleges that Defendant engaged in bad faith in the reviewing, adjusting, and settling of his insurance claim.  [Doc. 1 at ¶¶ 52–53].  Plaintiff alleges, inter alia, that Defendant "fail[ed to pay] or delay[ed] payment of reasonable compensation for the injuries, damages, and losses Plaintiff suffered at the hands of an uninsured/underinsured motorist" and "[i]ncompetently evaluat[ed] Plaintiff's claim."  [*Id.* at ¶ 53].  Again, as mentioned above, the central point of the Parties' dispute appears to be the value assigned to Plaintiff's alleged covered injuries.  [Doc. 27 at 4].

In evaluating a plaintiff's choice of venue for tort claims, "[c]ourts . . . generally focus on the location where the tortious conduct occurred," *Premier Grp.*, 2015 WL 4512313, at *7, and "where the harms were felt," 14D Federal Practice & Procedure § 3806.  Plaintiff argues that venue is proper in Colorado for his tort claim because, in addition to the fact that he communicated with Wesco from Colorado, Plaintiff "has received all of his medical care, treatment, and surgeries in Colorado" and his injuries are ongoing in Colorado.  [Doc. 24 at 4–5].  Defendant takes the position that "Plaintiff's residence and medical treatment in Colorado are insufficient bases to support venue in this District."  [Doc. 15 at 4].

Here, the alleged tortious conduct is Defendant's alleged bad-faith handling of Plaintiff's claim.  Wesco's alleged actions presumably occurred in Ohio, where Wesco is located.  But Plaintiff also alleges that he felt the effects of that bad faith in Colorado and separately notes that he has received medical treatment in Colorado.  To be sure, "the

10

mere fact that a plaintiff claims to have suffered injuries upon returning to [his] state of residence does not necessarily constitute a substantial part of the events or omissions giving rise to a claim," *Premier Grp.*, 2015 WL 4512313, at *7, and in many cases, medical treatment for injuries does not amount to a "substantial part" of the events underlying a claim for purposes of § 1391(b)(2).  *See, e.g.*, *Titsworth v. Hodge*, No. 6:17-cv-00350-RAW, 2018 WL 3312985, at *3 (E.D. Okla. July 3, 2018); *Cranford v. Tenn. Steel Haulers, Inc.*, No. 1:17-cv-02768-ELH, 2018 WL 3496428, at *9 (D. Md. July 20, 2018).

But in this case, Plaintiff's Colorado medical treatment is highly relevant to the substance of his bad faith claim because the Parties dispute the "nature, extent, and causation of some of the injuries and damages claimed by Plaintiff, as well as the amount sought by Plaintiff with respect to his UM/UIM claim." [Doc. 27 at 4]; *see also* [Doc. 24-1 at ¶ 6 (Plaintiff stating that his two Colorado orthopedic surgeons "will testify to causation and damages")].  In other words, Plaintiff's damages are not simply ancillary to the substantive aspects of his claim—rather, the extent of Plaintiff's damages and the nature, scope, and necessity of his medical treatment will play a crucial role in determining whether Defendant acted in bad faith by refusing to pay benefits.  *See Sanderson v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 1213, 1217 (Colo. App. 2010) ("If a reasonable person would find that the insurer's justification for denying or delaying payment of a claim was 'fairly debatable' (i.e., if reasonable minds could disagree as to the coverage-determining facts or law), then this weighs against a finding that the insurer acted unreasonably."). Accordingly, Plaintiff's medical treatment in Colorado amounts to a "substantial part of the events . . . giving rise to" his bad faith claim.  *See Ward v. Certain Underwriters at Lloyd's of London*, No. 3:18-cv-07551-JCS, 2019 WL 2076991, at *5 (N.D. Cal. May 10, 2019)

(finding § 1391(b)(2) satisfied where, inter alia, the plaintiff "sought medical treatment in th[e] district" and "[t]he nature of [the plaintiff's] injury was one of the reasons that [the insurer] initially denied [his] claim, and might well be at issue in th[e] litigation").

In sum, the Court concludes that venue is proper in Colorado for each of Plaintiff's claims and dismissal is not warranted. Accordingly, the Motion to Dismiss is **DENIED** to the extent it seeks dismissal of the case under Rule 12(b)(3).

## II.  Transfer of Venue

In the alternative, Wesco argues that this case should be transferred "to Texas" under § 1404(a), later specifying that it requests that the case be transferred to the Northern District of Texas. [Doc. 15 at 5–7]. The Court considers the following factors when deciding whether to transfer a case for "the convenience of parties and witnesses, [and] in the interest of justice" under § 1404(a):

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Emps. Mut. Cas. Co.*, 618 F.3d at 1167 (cleaned up). The Court limits its analysis to the factors discussed by Defendant in its Motion. *See* [Doc. 15 at 5–7].

***Plaintiff's Choice of Forum.*** Defendant acknowledges that Plaintiff chose to file this case in Colorado, but argues that this selection "should be given minimal weight" due to the case's "overwhelming connection to Texas." [*Id.* at 6]. However, this Court has concluded that a substantial part of the events giving rise to Plaintiff's claims occurred in Colorado. The Tenth Circuit has instructed that "[u]nless the balance [of the factors] is

strongly in favor of the movant," the plaintiff's choice of forum "should rarely be disturbed." *Emps. Mut. Cas. Co.*, 618 F.3d at 1167 (quotation omitted). The Court thus declines to minimize the weight attributable to this factor, which weighs against transfer.

**The Location of Witnesses.** "The convenience of witnesses is the most important factor in deciding a motion under § 1404(a)." *Id.* at 1169 (quotation omitted). To show that the current forum is inconvenient for witnesses, the movant must (1) identify the witnesses and their locations; (2) indicate "the quality or materiality of" the witnesses' testimony; and (3) show that the witnesses are unwilling to come to trial, that deposition testimony would be unsatisfactory, or that the use of compulsory process would be necessary. *Id.* (quotation omitted).

Defendant contends that "key parties and witnesses are located in Texas," including "law enforcement, the hotel and its employees, the driver of the van carrying Plaintiff, [Mr.] Zavala, other bystanders who witnessed the motor vehicle accident, and any and all post-accident treaters located in Texas, including paramedics." [Doc. 15 at 6 (footnote omitted)]. However, Defendant does not explain the materiality of these witnesses' testimony, argue that these witnesses are unwilling to come to trial (except for Mr. Zavala, who is no longer a party to this case), *see* [*id.* at 6 n.1], or assert that deposition testimony from these witnesses would be unsatisfactory. It is not readily apparent that any of these witnesses would have testimony material to Plaintiff's claims against Wesco, which will focus primarily on Plaintiff's damages, his entitlement to benefits under the Policy, and Wesco's handling of his insurance claim. Moreover, Plaintiff represents in his declaration that he did not receive treatment from any medical providers in Texas, and his two orthopedic surgeons "who will testify to causation and

damages" are in Colorado, as is his wife, whom he also expects to testify. [Doc. 24-1 at ¶¶ 4–6]. Based on this record, the convenience of witnesses weighs in favor of keeping this case in Colorado.

*Questions of Local Law.* Next, Defendant argues that "the at-issue contract is a Texas commercial automobile insurance policy" and "[i]t makes the most sense for a Texas court to apply Texas law." [Doc. 15 at 6]. However, as discussed above, Defendant does not argue that the Policy contains a Texas choice-of-law provision, and Plaintiff's claims are not expressly raised under Texas law—in fact, his bad faith claim is raised in part under a Colorado statute. [Doc. 1 at ¶¶ 51–57]. In other words, there is presently no indication that Texas law applies in this case. Furthermore, "when a case is transferred under § 1404(a), the transferee court must apply the same law as applicable in the transferor court, irrespective of whether the transfer was sought by the plaintiff or defendant." *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515–16 (10th Cir. 1991). In this diversity case, that would be Colorado law, absent an alternative showing by the Parties, *Racher v. Westlake Nursing Home Ltd. P'ship*, 871 F.3d 1152, 1162 (10th Cir. 2017), so even if this case were transferred to a Texas federal district court, Colorado substantive law would still apply. Finally, Defendant points to no significant difference between Texas and Colorado law—particularly in the context of Plaintiff's breach of contract claim. Accordingly, this factor weighs against transfer.

*Local Interests.* Finally, Defendant argues that "[l]ocal interests plainly support resolving a dispute surrounding a Dallas, Texas motor vehicle accident in Texas federal court." [Doc. 15 at 7]. But this case is no longer a negligence case, and it involves only

an insurance dispute between an Ohio insurer and a Colorado individual. Defendant has not shown why Texas has an interest in this discrete dispute.

Considering all of the factors addressed by Defendant, the Court finds that they weigh against transferring this case to another district. Accordingly, Defendant has not met its burden to show that transfer is appropriate under § 1404(a), and the Motion to Transfer is **DENIED**.

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that:

(1) The Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(3) or, Alternatively, Transfer Venue [Doc. 15] is **DENIED**.

DATED: May 20, 2024

BY THE COURT:

Nina Y. Wang
United States District Judge